UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
YUNHAN DUAN and YIMING SU,                          :
                                                    :
                              Plaintiffs,           :
                                                    :
            -against-                               :          REPORT AND
                                                    :          RECOMMENDATION
STUDIO M BAR & LOUNGE INC, *et al.*,                :
                                                    :          No. 20-CV-2240-RPK-JRC
                              Defendants.           :
------------------------------------------------------------------x

JAMES R. CHO, United States Magistrate Judge:

        Plaintiffs Yunhan Duan ("Duan") and Yiming Su ("Su," and collectively, "plaintiffs")

bring this wage-and-hour action against defendants Studio M Bar & Lounge Inc, Provence BBQ

& Bar Inc, Pho Dem Inc. and Pot Pa Hotpot Inc. (collectively, "defendants" or "corporate

defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and

the New York Labor Law ("NYLL") § 650 *et seq*. *See generally* Am. Compl., Dkt. 5.[1]  Upon

plaintiffs' application and in light of the corporate defendants' failure to appear in or otherwise

defend this action, the Clerk of the Court entered defendants' default on October 4, 2021.  *See*

Dkt. 20.

        Currently pending before this Court, on a referral from the Honorable Rachel P. Kovner,

is plaintiffs' motion for default judgment, seeking unpaid minimum and overtime wages, spread

of hours premiums, statutory penalties, and liquidated damages.  *See* Order Referring Motion

dated May 19, 2023; Motion for Default Judgment, Dkt. 55; Proposed Default Judgment, Dkt.

---

[1] Plaintiffs dismissed their claims against defendants Rose Cake House Inc., Night Market BBQ Inc., Sealicious Inc., and Wei Yin Chen.  *See* Dkts. 27, 28, 49.  In addition, plaintiffs are not seeking entry of default judgment against any of the individual defendants.  Since plaintiffs have not pursued the claims against them, the Court recommends dismissing those claims.  *See Govt. Employees Ins. Co. v. Wellmart RX, Inc.*, No. 19-CV-4414, 2022 WL 17774929, at *13 n.10 (E.D.N.Y. June 24, 2022); *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *1 n.1 (E.D.N.Y. Dec. 9, 2019).

55-14; *see generally* Mem. of Law in Supp. of Mot. for Default Judgment ("Pls.' Mem."), Dkt. 55-1.[2]  For the reasons set forth below, this Court respectfully recommends granting plaintiffs' motion in part.

## I.    Background

The following facts, as drawn from plaintiffs' Amended Complaint and their affidavits, are accepted as true for purposes of this motion.  Defendants are New York corporations with principal places of business in Flushing, Queens, New York.  *See* Am. Compl. ¶¶ 13, 14, 17, 18. Plaintiffs allege that the "[c]orporate [d]efendants . . . are joint[] employers of Plaintiffs and constitute an enterprise" that operated several restaurants.  *Id.* ¶ 45.  Plaintiffs further allege that the restaurants operated by defendants "share staff, including Plaintiffs and chefs, and cooks"; "use the same delivery people"; paid plaintiffs for their work "no matter what locations they worked"; and "[a]re otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same partners[.]"  *Id.*  Specifically, plaintiffs were directed to pick up delivery orders on behalf of all of the restaurants at two locations -- 36-41 Main Street and 45-08 Parsons Boulevard, Flushing, New York --  regardless of which restaurant received the order.  *Id.*; *see* Affidavit of Yunhan Duan ("Duan Aff.") ¶¶ 4-6, Dkt. 55-4; Affidavit of Yiming Su ("Su Aff.") ¶¶ 4-5, Dkt. 55-5.

### A.    Yunhan Duan

From October 26, 2019 until April 25, 2020, plaintiff Duan worked for defendants' restaurants as a delivery person, picking up orders and making deliveries to customers who ordered food online.  *See* Am. Compl. ¶¶ 9, 51; Duan Aff. ¶¶ 13-30.  Duan was interviewed by "Jayden" Doe, who served as Duan's main supervisor, including determining Duan's work

---

[2] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

schedule, his rate of compensation and occasionally "handling wage payments to Plaintiff." *See* Am. Compl. ¶¶ 52-53, 55-56.

From October 26, 2019 through November 10, 2019, Duan regularly worked seven days per week, from 9:30 p.m. to 5:45 a.m. (8.25 hours per day), for a total of 57.75 hours per week. *See id.* ¶ 58; Duan Aff. ¶ 13.  However, on November 2, 4, 6 and 8, 2019, Duan was required to work from 2:00 p.m. until 5:00 a.m. the next day (15 hours).  *See* Am. Compl. ¶ 59; Duan Aff. ¶ 14.

From November 11, 2019 to March 7, 2020, Duan regularly worked seven days per week, from 1:30 p.m. to 5:00 a.m., on the next day (15.5 hours per day), for a total of 108.5 hours per week.  *See* Am. Compl. ¶¶ 60-61; Duan Aff. ¶¶ 15-20.  Each day, Duan worked at 45-08 Parsons Boulevard until 9:50 or 10:50 p.m., then he was required to go to 36-41 Main Street to continue working.  *See* Am. Compl. ¶¶ 60-61; Duan Aff. ¶¶ 16, 19.

From March 8, 2020 to April 12, 2020, Duan worked seven days per week, from 4:00 p.m. to 5:00 a.m. the next day (13 hours), for a total of 91 hours per week.[3]  *See* Am. Compl. ¶¶ 62, 63 (repeated); Duan Aff. ¶¶ 21, 24 (repeated).  During this time, Duan was required to pick up all delivery orders at 36-41 Main Street.  *See* Am. Compl. ¶¶ 62, 63 (repeated); Duan Aff. ¶¶ 22, 25 (repeated).

From October 26, 2019 to March 13, 2020, Duan was paid weekly $1,400, including $700 in tips.  *See* Am. Compl. ¶ 64; Duan Aff. ¶ 27.  Defendants paid Duan $700 per week regardless of the number of hours that he worked.  *See* Duan Aff. ¶ 28; Am. Compl. ¶ 64.

---

[3] Plaintiffs incorrectly calculate the total hours worked per week as 77 hours.  *See* Am. Compl. ¶¶ 62, 63; Duan Aff. ¶¶ 23, 26.

From March 15, 2020 to April 25, 2020,[4] Duan was paid $1,850 every 15 days, including $900 in tips. *See* Am. Compl. ¶ 65; Duan Aff. ¶ 29. Again, defendants paid Duan $950 every 15 days, regardless of how many hours he worked. *See* Am. Compl. ¶ 65; Duan Aff. ¶ 30.

In addition, throughout his employment, Duan was required to use his own vehicle to make deliveries, spending on average $35 to $40 in related expenses per day. *See* Am. Compl. ¶ 70; Duan Aff. ¶ 36. Further, defendants never provided Duan with a paystub or wage statement. *See* Am. Compl. ¶¶ 57, 69.

Duan alleges that defendants failed to pay him an overtime premium for those hours he worked in excess of 40 per week and failed to pay the required minimum wage throughout his employment. *See id*. ¶¶ 66-67.

B. **Yiming Su[5]**

Plaintiff Su worked as a delivery person for defendants from November 15, 2019 to March 20, 2020. *See* Am. Compl. ¶¶ 12, 71; Su Aff. ¶¶ 2, 11-12. Su was interviewed by "Jayden" Doe, who, along with "A Jie," determined Su's work schedule, his rate of compensation and "handled wage payments to" Su. *See* Am. Compl. ¶¶ 72-73, 75-76. Su picked up orders and made deliveries to customers who placed online food orders. *See id.* ¶ 12.

From November 15, 2019 through March 20, 2020, Su regularly worked seven days per week, from 9:30 p.m. to 5:45 a.m. (8.25 hours per day), for a total of 57.75 hours per week.[6] *See*

---

[4] Neither the Amended Complaint nor Duan's affidavit describe Duan's work schedule from April 13, 2020 to April 25, 2020.

[5] The Amended Complaint contains an additional section regarding Yiming Su, but that section appears to be incomplete and unrelated to the period at issue in this action. *See* Am. Compl. ¶¶ 86-99; *see also id*. ¶ 94 (referring to Su's employment "in or around December 2014"). The Court can only assume that this section was inadvertently included in the Amended Complaint.

[6] Plaintiffs' damages calculation contains a typographical error, stating that the applicable time period commences on December 15, 2019, instead of November 15, 2019. *See* Dkt. 55-12 at ECF page 5.

*id.* ¶ 78; Su Aff. ¶ 11.[7]  Su was paid every ten days in the amount of $1,200, including approximately $600 in tips, regardless of the number of hours that he actually worked.  *See id.* ¶ 80; Su Aff. ¶ 12.

In addition, throughout his employment, Su was required to use his own vehicle to make deliveries, spending on average $30 to $35 in related expenses per day.  *See* Am. Compl. ¶ 85; Su Aff. ¶ 18.  Further, defendants never provided Su with a paystub or wage statement.  *See* Am. Compl. ¶¶ 77, 84.

Su alleges that he was not paid an overtime premium for those hours he worked in excess of 40 per week and was not paid the required minimum wage throughout his employment.  *See* Am. Compl. ¶¶ 81-82.

## II.     Procedural History

Plaintiffs allege that defendants failed to pay plaintiffs minimum and overtime wages pursuant to the FLSA and NYLL (Counts I, II, III, IV); failed to pay compensation under New York's spread of hours provision (Count V); and failed to provide a wage notice at the time of hire and detailed paystub information on paydays, under the NYLL Wage Theft Prevention Act ("WTPA"), *see* N.Y. Labor Law §§ 195(1)(a), 195(3) (Counts VI and VII).[8]

On May 18, 2020, plaintiffs timely commenced this action.  *See* Dkt. 1.  On June 9, 2020,

---

[7] In the Amended Complaint, plaintiffs allege that during this period, Su did not work for three or four days, due to a change in defendants' scheduling.  *See id.* ¶ 79.  However, the pleading is contradicted by the preceding paragraph in the Amended Complaint and Su's affidavit, which state that he worked seven days per week, without a day off. *See id.* ¶ 78; Su Aff. ¶ 11.

[8] In the Amended Complaint, plaintiffs also alleged retaliation claims under the NYLL and FLSA, but failed to mention these claims in their motion for default judgment.  *See* Am. Compl., Dkt. 5 at ECF pages 26-27 (Counts VIII, I[X]).  Plaintiffs' claims for retaliation should be deemed abandoned.  *See, e.g.*, *Payamps*, 2019 WL 8381264, at *3 n.3 (on motion for default judgment, deeming cause of action abandoned where plaintiff failed to address it in motion); *Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85, 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (on default judgment motion, finding that claim for injunctive relief was abandoned because plaintiff did not request such relief in its motion for default judgment).

plaintiffs filed an Amended Complaint. Dkt. 5. The corporate defendants were served via the New York Secretary of State in November 2020. *See* Dkts. 12, 14, 15. Based on the affidavits of service, this Court finds that plaintiffs properly served the corporate defendants in accordance with Rule 4(h) of the Federal Rules of Civil Procedure. Defendants have failed to answer the Complaint or otherwise appear in this case. On October 4, 2021, the Clerk entered a Certificate of Default as to the corporate defendants. *See* Dkt. 20.

On January 31, 2022, plaintiffs moved for default judgment against several of the defendants named in the Amended Complaint. *See* Dkt. 30. However, on March 29, 2022, plaintiffs withdrew their motion for default judgment without prejudice after certain of the defaulting defendants appeared in the case. *See* Dkt. 37. After plaintiffs reached a settlement with the appearing defendants ("settling defendants"), on April 24, 2023, plaintiffs again filed a motion for default judgment. *See* Dkt. 52. On May 1, 2023, this Court denied plaintiffs' motion for failure to comply with the Local Civil Rules, and noted certain deficiencies in plaintiffs' motion papers. *See* Order, Dkt. 53. On May 18, 2023, plaintiffs filed the instant motion for default judgment, but limited their motion to pursuing default judgment against only the corporate defendants, Studio M Bar & Lounge Inc, Provence BBQ & Bar Inc, Pho Dem Inc. and Pot Pa Hotpot Inc. *See* Dkt. 55.

## Discussion

### III.    Liability

#### A.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. The Rule sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See id.*; *see also* Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  This first step is nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment.  *See* Fed. R. Civ. P. 55(a), (b)(2).

Here, on October 4, 2021, the Clerk of the Court entered a default against defendants, after defendants failed to respond to the Complaint.  *See* Dkt. 20.  To date, defendants have not appeared or moved to vacate the entry of default.

When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments are 'generally disfavored and are reserved for rare occasions.'"  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96).  Providing guidance as to when a default judgment is appropriate, the Second

Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. at 95. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor."). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Here, the corporate defendants did not respond to the Amended Complaint despite proper service.  Plaintiffs filed affidavits confirming service of the motion for default judgment and this Court's order scheduling a hearing on the motion, and the minute entry following the motion hearing.  *See* Dkts. 56, 64, 65.  The defendants have nonetheless failed to respond to plaintiffs' motion for default judgment or otherwise appear in this action.  Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Amended Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability under federal and state law.

**B.    FLSA**

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-6, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014).  To demonstrate entitlement to minimum wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists, and (2) the employment falls under the FLSA's individual or enterprise coverage provisions.  *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

**1.    Employer/Employee Relationship**

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as

9

"an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a).  The FLSA further defines the term "employee" as "any individual employed by an employer."  *Id.* § 203(e)(1).  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

An employee may simultaneously have multiple employers for purposes of determining responsibility under the FLSA.  *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases).  There is "no rigid rule for the identification of an FLSA employer."  *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374-75 (E.D.N.Y. 2013) (citing *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)).  Rather, in determining whether an employer-employee relationship exists for FLSA purposes, courts have adopted an "economic realities" test, "grounded in 'economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity."  *Barfield*, 537 F.3d at 141.  Thus, to determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case."  *Herman*, 172 F.3d at 139 (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)) (internal citation omitted); *see Guerrero*, 2019 WL 4889591, at *4.

When examining the "economic reality" of a particular situation, the following factors are relevant:  "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Irizarry*

*v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship.  *See Zheng*, 355 F.3d at 71-72.

In addition, under the FLSA, multiple corporate entities can be liable as the "employer" under "a joint employer theory based on the theory that they operate as a single enterprise with significant interrelation of operations."  *Apolinar v. R.J. 49 Rest., LLC*, No. 15-CV-8655, 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016); *see Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020); *see also Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).  "[S]eparate corporations under common ownership and management are a common example of such a single integrated enterprise."  *Rios v. BBQ Chicken Don Alex*, No. 16-CV-6630, 2018 WL 264512, at *3 (E.D.N.Y. Jan. 2, 2018) (internal quotation marks and citation omitted).  "[C]ourts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Apolinar*, 2016 WL 2903278, at *4 (quoting *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014)); *accord Chen v. Hunan Manor Enterps.*, No. 17-CV-802, 2023 WL 5574854, at *6 (E.D.N.Y. Aug. 29, 2023).  Where this theory applies, courts may impose liability for a violation where "an employee, who is not technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer."  *Arculeo*, 425 F.3d at 198; *see Chen*, 2023 WL 5574854, at *6; *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017).

Moreover, for the FLSA's minimum wage and overtime provisions to apply to an

individual employee, the employee must have been "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," *id.* § 207(a)(1), with an annual gross volume of sales of at least $500,000, *id.* § 203(s)(1)(A)(ii). *See Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) ("To be 'engaged in commerce,' the employee must perform work 'involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof.'") (quoting 29 C.F.R. § 779.103).

Plaintiffs' unopposed allegations are sufficient to show that the defendants operated their restaurants as a single integrated enterprise and that plaintiffs were employed by the enterprise. First, plaintiffs sufficiently allege that the corporate defendants owned and operated the restaurants for which plaintiffs made deliveries. Plaintiffs further allege that the corporate defendants are commonly owned or managed by the same individuals who hired plaintiffs, determined their wages and compensation, and had the authority to fire employees. *See* Am. Compl. ¶¶ 23-36,[9] 45-47. Plaintiffs allege that the individuals who managed their employment acted on behalf of the defendants with respect to plaintiffs' employment. *See id.* ¶¶ 23-36, 52-56, 72-76. Importantly, the participating restaurants share cooking and delivery staff, including plaintiffs. *See id.* ¶ 45. Plaintiffs were directed to pick up delivery orders at 36-41 Main Street and 45-08 Parsons Boulevard, and were paid for their deliveries, regardless of which restaurant prepared the order. *See id.*

In light of the foregoing, plaintiffs have sufficiently alleged common management, common ownership and "an interrelation of operations or centralized control of labor relations"

---

[9] The Amended Complaint contains two different paragraphs numbered, "24." *See* Am. Compl. at ECF pages 5-6.

among the defendants and their restaurants so as to treat them as a single integrated enterprise. *See Chen*, 2023 WL 5574854, at *7 (finding single integrated enterprise where restaurants moved employees "from restaurant to restaurant, [but] their pay, work schedules, and conditions of employment all remained the same"); *Rios*, 2018 WL 264512, at *4 (finding that restaurant operated as a single integrated enterprise where "supplies and employees are interchangeable between the [restaurants]"); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 559 (S.D.N.Y. 2015) (finding "centralized control of labor relations" where delivery persons "were interchanged [among] all Mooncake locations"). To be sure, "'although Plaintiffs could have included more detail in their amended complaint, they have put forward more than 'mere boilerplate allegations' of the existence of a joint integrated enterprise." *Flores*, 256 F. Supp. 3d at 442 (quoting *Li v. Ichiro Sushi, Inc.*, No. 14-CV-102402, 2016 WL 1271068, at *6 (S.D.N.Y. Mar. 29, 2016)); *Garcia v. Chirping Chicken NYC, Inc.*, No. 15-CV-2335, 2016 U.S. Dist. LEXIS 32750, at *21 (E.D.N.Y. Mar. 11, 2016) (finding that limited details about defaulting defendants were sufficient to establish that all defendants were a single employer under the FLSA and NYLL).

### 2.    Interstate Commerce

In addition, plaintiffs' allegations are sufficient to conclude that the defendants operated in interstate commerce. Plaintiffs' allegations that the corporate defendants had annual revenue in excess of $500,000[10] and that the defendants are "engaged in interstate commerce" are sufficient to meet the pleading requirement for enterprise coverage under the FLSA in a default proceeding. *See Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2815742, at

---

[10] Since the Court finds that the corporate defendants' restaurants constitute a single, integrated enterprise, "their gross annual sales may be combined to determine whether they satisfy the $500,000 enterprise-coverage threshold." *Chen*, 2023 WL 5574854, at *5.

*10 (E.D.N.Y. Feb. 28, 2023), *report and recommendation adopted*, 2023 WL 2583856 (E.D.N.Y. Mar. 21, 2023); *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) ("Plaintiffs' specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA."), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).  Although plaintiffs' allegations are sparse in this regard, courts addressing motions for default judgment have found similar conclusory, but undisputed allegations, to be sufficient to satisfy the interstate commerce requirement.  *See Espinoza La Oficinia Bar Corp.*, No. 20-CV-1237, 2022 WL 987429, at *13 n.13 (E.D.N.Y. Mar. 1, 2022) (collecting cases), *report and recommendation adopted as modified*, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022); *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411, 2017 WL 835321, at *5 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).

Accordingly, this Court recommends finding that the allegations in plaintiffs' Amended Complaint, admitted by entry of default, are sufficient to conclude that the defendants jointly employed plaintiffs, and plaintiffs' employment falls under the FLSA's protections.[11]

---

[11] The FLSA has a two-year statute of limitations, unless a plaintiff shows that the employer's actions were willful, in which case the limitations period extends to three years.  *See* 29 U.S.C. § 255(a).  The NYLL has a six-year statute of limitations.  S*ee* N.Y. Lab. Law § 663(3).  Plaintiffs allege that defendants willfully violated both the FLSA and the NYLL.  *See* Am. Compl. ¶¶ 1, 2, 49, 107, 111, 119.  "Generally, courts have found that a defendant's default establishes willfulness."  *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015); *see also Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603, 2019 WL 5694118, at *7 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, 2019 WL 5693768 (E.D.N.Y. July 8, 2019) (applying three-year statute of limitations period); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)) ("In the present case, defendants defaulted, and therefore the three-year statute of limitations applies.").  Because defendants have defaulted, this Court applies the three-year limitations period for FLSA violations.

C.     NYLL

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees.  The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  N.Y. Lab. Law § 190(3).  An employee is defined as "any person employed for hire by an employer in any employment."  *Id.* § 190(2).  The NYLL's definitions with respect to "employer status" are nearly identical to the FLSA's definitions and have been interpreted coextensively.  *See Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-CV-5735, 2017 WL 2600051, at *3 (S.D.N.Y. June 15, 2017).  Accordingly, "courts use the same tests to determine joint employment under both the NYLL and the FLSA."  *Khan v. Nyrene, Inc.*, No. 18-CV-557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).

For the reasons discussed, this Court recommends finding that plaintiffs were employed by a single integrated enterprise comprised of the defendants, under the NYLL.  *See Syed v. S & P Pharm. Corp.*, No. 21-CV-6000, 2023 WL 2614212, at *4 (E.D.N.Y. Mar. 23, 2023) (applying "single integrated enterprise" doctrine to NYLL claims): *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-CV-5269, 2016 WL 5092588, at *16-*17 (E.D.N.Y. Sept. 19, 2016).

D.     Minimum Wages

Both the FLSA and the NYLL require employers to pay employees at a minimum hourly rate.  *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652.  The applicable minimum wage under the NYLL for a New York City employer with eleven or more employees[12] is $15.00 per hour, since

---

[12] Plaintiffs allege that defendants had at least 50 employees.  *See* Am. Compl. ¶ 48.

December 31, 2018.  *See* N.Y. Lab. Law § 652(1)(a)(ii).  Given that the minimum wage under

the NYLL is higher than that of the FLSA for all relevant time periods,[13] this Court analyzes

plaintiffs' minimum wage entitlement under the NYLL.  *See* 29 C.F.R. § 778.5; *Fermin v. Las*

*Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 43 (E.D.N.Y. 2015).

To determine whether plaintiffs were paid the applicable minimum wage, the Court must

first determine the plaintiff's regular hourly wage rate.  *See Chen*, 2023 WL 2583856, at *11;

*Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3

(E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y.

May 28, 2019).  Under the FLSA, the regular rate is defined "as the hourly rate actually paid the

employee for the normal, non-overtime workweek for which he [or she] is employed" and is

"drawn from what happens under the employment contract."  29 C.F.R. § 778.108.  Because

plaintiffs were compensated on a weekly or bi-weekly basis, the regular hourly rate is calculated

by "dividing the salary by the number of hours which the salary is intended to compensate."  *Id.*

§ 778.113(a).

Under the FLSA, "[t]here is a rebuttable presumption that an employer's payment of a

weekly salary represents compensation for the first 40 hours of an employee's work-week; the

burden is on the employer to rebut this presumption with evidence that the employer and

employee had an agreement that the employee's weekly compensation would cover a different

number of hours."  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385

(E.D.N.Y. 2012) (internal quotation marks and citation omitted); *see Brito v. ATA Freight Line,*

*Ltd.*, No. 20-CV-3132, 2021 WL 7830146, at *8 (E.D.N.Y. Aug. 24, 2021); *Perez Garcia v.*

*Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The

---

[13] The applicable federal minimum wage rate was $7.25.  *See* 29 U.S.C. ¶¶ 206(a)(1)(C).

FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement.") (internal quotation marks and citation omitted).  Similarly, a NYLL regulation provides that a restaurant employee's regular hourly rate is determined by dividing the employee's weekly earnings by the lesser of forty hours or the hours actually worked.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (where "an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.").

Here, each plaintiff alleges that they were paid the same amount "regardless of the number of hours [he] actually worked."  *See, e.g.*, Duan Decl. ¶¶ 28, 30; Su Decl. ¶ 12. However, in violation of the applicable NYLL regulation, plaintiffs incorrectly calculated their regular rates based on all hours that they worked.  *See* Dkt. 55-12.  On the contrary, since the applicable law requires that the court calculate plaintiffs' regular rates of pay by applying the formula contained in section 146-3.5(b), the Court recommends calculating plaintiffs' regular rates by dividing plaintiffs' weekly wages by 40 hours.  *See Chen, 2023 WL 2583856, at \*13; Urena v. 0325 Tuta Corp.*, No. 20-CV-3751, 2022 WL 4284879, at \*4 (S.D.N.Y. Sept. 16, 2022), *report and recommendation adopted*, 2022 WL 17249362 (S.D.N.Y. Nov. 28, 2022).

### 1.    **Yunhan Duan**

From October 26, 2019 through March 13, 2020, defendants paid plaintiff Duan $700 per week.  *See* Duan Aff. ¶¶ 27-28.  Calculating Duan's regular rate based on a 40-hour work week pursuant to section 146-3.5, Duan's regular rate was $17.50, higher than the applicable minimum wage.  Therefore, the Court recommends denying Duan's claim for unpaid minimum wages for that time period.

However, from March 15, 2020 through April 25, 2020, defendants paid Duan $443.33 per week.[14]  During that period, Duan's regular rate was $11.08 per hour ($443.33 ÷ 40 hours), approximately $3.92 below the hourly minimum wage rate ($15.00-11.08).  Accordingly, plaintiff Duan is entitled to recover those unpaid minimum wages pursuant to the NYLL.  *See Espinoza*, 2022 WL 987429, at *14.

### 2.    Yiming Su

Plaintiff Su was paid $420 per week regardless of the number of hours he worked.[15]  Therefore, his regular rate of pay was $10.50 per hour ($420 ÷ 40 hours), approximately $4.50 below the hourly minimum wage rate ($15.00 - $10.50).  Accordingly, plaintiff Su is owed unpaid minimum wages pursuant to the NYLL.

### E.    Overtime Wages

Under the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.2).  Here, each plaintiff alleges that he regularly worked for defendants in excess of 40 hours per week, but was not paid the requisite premium for those overtime hours.  Thus, plaintiffs have sufficiently alleged claims against the defendants for unpaid overtime under the FLSA and the NYLL.

### F.    Spread-of-Hours

Another area in which the NYLL differs from the FLSA is the NYLL's requirement that an employer pay employees a "spread-of-hours" premium that is equal to "one additional hour of

---

[14] Duan was paid $950 every fifteen days.  *See* Duan Decl. ¶ 30.  On a weekly basis, Duan's salary equals $433.33 per week ((950 ÷ 15) x 7).

[15] Su was paid $600 every ten days.  *See* Su Decl. ¶ 12.  On a weekly basis, Su's salary amounted to $420 per week.

pay at the basic minimum hourly rate" for each day an employee works in excess of ten hours. *See* N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6; *see also id.* § 142-2.4.  The spread-of-hours mandate applies to "all employees in restaurants . . ., regardless of a given employee's regular rate of pay."  *Id.* § 146-1.6(d).

Plaintiff Duan seeks recovery for spread-of-hours compensation for one hour's pay at the basic minimum hourly rate for each day that he worked more than ten hours.  As Duan alleges that he worked for the defendants more than ten hours per day at various times during his employment, but was not paid spread-of-hours wages, he has sufficiently alleged a claim for relief.

### G.    Wage Theft Prevention Act

The NYLL's WTPA requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . .; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay."  N.Y. Lab. Law § 195(1)(a).  In addition, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."  N.Y. Lab. Law § 195(3).

Plaintiffs sufficiently allege that the defendants failed to provide each plaintiff with the wage notice required by the WTPA, section 195(1)(a) of the NYLL.  In addition, the Amended Complaint sufficiently alleges that defendants failed to provide plaintiffs with proper wage

statements, in violation of section 195(3) of the NYLL.  Therefore, plaintiffs have adequately

stated claims for violations of the WTPA by the defendants.  *See Espinoza*, 2022 WL 987429, at

*15.

## IV.    Relief

A party's default "is not considered an admission of damages."  *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v.*

*Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  Accordingly, the court must conduct an inquiry

sufficient to determine the extent of damages to a "reasonable certainty."  *Credit Lyonnais Sec.*

*(USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  A court may make this

determination based upon evidence presented at a hearing or upon a review of detailed affidavits

and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*,

951 F.2d 504, 508 (2d Cir. 1991).

"Under both the FLSA and NYLL, an employer is required to maintain records of the

wages, hours, and persons employed by him [or her]."  *Lu Nan Fan v. Jenny & Richard's Inc.*,

No. 17-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotations and

citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9,

2019); *see Espinoza*, 2022 WL 987429, at *5.  Where, as here, defendants, having defaulted, fail

to produce the requisite records, a plaintiff's sworn statements "containing information as to

hours worked and rates of pay based on estimation and recollection," satisfies a plaintiff's

burden of establishing how many hours he or she worked and how much he or she was paid.  *See*

*Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3

(E.D.N.Y. July 19, 2017) (internal quotations and citation omitted), *report and recommendation*

*adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera*, 2015 WL 1529653, at

*8. "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Lu Nan Fan*, 2019 WL 1549033, at *9.

Here, plaintiffs have submitted their own affidavits describing their dates of employment, along with average hours worked and wages paid. Based on those declarations, plaintiffs' counsel calculated the damages due to plaintiffs. *See* Dkt. 55-12. In light of defendants' default, the evidence submitted by plaintiffs stands uncontroverted, and, therefore, plaintiffs have provided a sufficient basis upon which to determine damages.

### A.    Unpaid Minimum Wages

#### 1.    Duan

During the latter part of Duan's employment, from March 15, 2020 through April 25, 2020, defendants paid Duan at a regular rate of $11.08 per hour ($443.33 ÷ 40 hours), or $3.92 below the hourly minimum wage rate ($15.00-11.08). Thus, Duan is entitled to $156.80 for the first 40 hours he worked during each of those weeks ($3.92 x 40 hours). In sum, the Court recommends awarding Duan **$784.00** ($156.80 x 5 weeks)[16] in unpaid minimum wages.

#### 2.    Su

During Su's employment, defendants paid him at a regular rate of $10.50 per hour ($420 per week ÷ 40 hours), or $4.50 below the hourly minimum wage rate ($15.00 - $10.50). Therefore, Su is owed $180.00 for the first 40 hours he worked in each week ($4.50 x 40 hours). In total, the Court recommends awarding Su **$3,240.00** ($180.00 × 18 weeks) in unpaid minimum wages.

---

[16] Plaintiffs' Amended Complaint and Duan's affidavit omit any information about Duan's work schedule between April 13, 2020 and April 25, 2020. Therefore, the Court recommends denying an award of minimum wages during that period. *See Savor Health, LLC v. Day*, No. 19-CV-9798, 2022 WL 912236, at *6 (S.D.N.Y. Mar. 29, 2022) (dismissing minimum wage claim where plaintiff failed to "allege the number of hours she worked").

B.    **Unpaid Overtime Compensation**

Under the FLSA and the NYLL, an employer must pay an employee overtime compensation at 1.5 times the employee's regular rate of pay for each hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata*, 723 F.3d at 200 (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL).  "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Guerrero*, 2019 WL 4889591, at *8 (internal quotations and citation omitted).

1.    **Yunhan Duan**

Duan sufficiently demonstrates that defendants failed to pay him at time-and-a-half throughout his employment, despite the fluctuation in his hours and pay over the course of his employment with defendants. *See* Duan Decl. ¶ 32.  Where Duan was paid below the minimum wage, the Court applies an overtime rate of 1.5 times the minimum wage, and where he was paid at a rate higher than the minimum wage, the Court applies an overtime rate of 1.5 times Duan's regular rate, as reflected in the table below. *See* 29 C.F.R. § 778.110(a) ("For overtime hours of work the employee must be paid . . .  a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4 ("An employer shall pay an employee for overtime at a wage rate of 1-1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek.").

| Time Period | Regular Rate | Overtime Rate | Overtime Hours | Owed Per Week | Weeks | Total |
|---|---|---|---|---|---|---|
| 10/26/2019-11/1/2019 | $17.50 | $26.25 | 17.75 | $465.94 | 1 | $465.94 |
| 11/2/2019-11/8/2019 | $17.50 | $26.25 | 44.75 | $1,174.69 | 1 | $1,174.69 |
| 11/9/2019-11/15/2019 | $17.50 | $26.25 | 54 | $1,417.50 | 1 | $1,417.50 |
| 11/16/2019-12/30/2019 | $17.50 | $26.25 | 68.5 | $1,798.13 | 6[17] | $10,788.78 |
| 12/31/2019-3/7/2020 | $17.50 | $26.25 | 68.5 | $1,798.13 | 9[18] | $16,183.17 |
| 3/8/2020-4/12/2020 | $11.08 | $22.50[19] | 51 | $1,147.50 | 5[20] | $5,737.50 |
| **Total** | | | | | | **$35,767.58** |

In sum, this Court recommends awarding Duan **$35,767.58** in unpaid overtime wages.

### 2.    Yiming Su

Su establishes that defendants did not pay him overtime wages for 17.75 hours he worked per week from November 15, 2019[21] to March 20, 2020.  *See* Su Aff. ¶¶ 11, 14.[22]  The Court

---

[17] Since plaintiffs calculated unpaid wages based on 6 weeks for this period, *see* Dkt. 55-12 at ECF page 3, the Court adopts that method even though it encompasses 6 weeks and 3 days.

[18] Plaintiffs again rounded down the number of weeks during this period.

[19] Based on the minimum wage rate of $15.00.

[20] As discussed above, since plaintiffs' Amended Complaint and Duan's affidavit omit any information about Duan's work schedule between April 13, 2020 and April 25, 2020, the Court recommends denying an award of damages during that period.  *See Nakahata*, 723 F.3d at 200-01 ("To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.").

[21] *See* footnote 6, above regarding typographical error in plaintiffs' damages calculation.

[22] In the Amended Complaint, plaintiffs allege that Su worked seven days per week without a day off.  *See* Am. Compl. ¶ 78.  However, in the next paragraph, the pleading contradicts itself stating:  "During this period, there were

applies an overtime rate of 1.5 times the minimum wage because Su was paid at a rate lower than the minimum wage.

Accordingly, this Court recommends awarding Su $399.38 per week ($22.50 per hour x 17.75 overtime hours per week) in unpaid overtime wages for 18 weeks, for a total of **$7,188.75**.

### C.    Spread of Hours Compensation

The NYLL provides that if the length of time between the beginning and end of an employee's workday (or the employee's "spread of hours") surpasses ten hours, the employer must pay the employee an additional hour of pay at the minimum wage. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017) (quoting 12 N.Y.C.R.R. § 146-1.6), *aff'd*, 2023 WL 2395995 (2d Cir. 2023); *see also Pineda v. Tokana Café Bar Restorant Inc.*, No. 16-CV-1155, 2017 WL 1194242, at *3 (S.D.N.Y. Mar. 30, 2017). "Spread of hours" includes "working time plus time off for meals plus intervals off duty." *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *9 (E.D.N.Y. Nov. 9, 2021) (quoting N.Y. Comp. Code R. & Regs. tit. 12 § 146-1.6). Restaurant workers are entitled to a spread of hours premium regardless of their regular rate of pay. *See* N.Y. Comp. Code R. & Regs. tit. 12 § 146-1.6(d).

Duan alleges that from November 2, 2019 to November 8, 2019, he worked for more than ten hours per day for four days; and from November 11, 2019 to April 12, 2020, he worked for more than 10 hours per day all seven days each week.[23] *See* Duan Decl. ¶¶ 13-26. Duan further alleges that defendants failed to pay him for an additional hour of pay at the minimum wage for

---

only three or four days when Defendant "A. Jie" required plaintiff Su to take a day off." *Id.* ¶ 79. On the other hand, in his sworn affidavit, Su affirms that he "worked seven days per week without a day off." Su Aff. ¶ 11. Given the internal contradiction in the pleading, the Court credits Su's affidavit on this issue.

[23] Duan avers that from October 26, 2019 through November 10, 2019, he worked seven days per week for 8.25 hours per day; on November 2, 4, 6, and 8, 2019, he worked 15 hours per day; from November 11, 2019 through March 7, 2020, he worked seven days per week for 15.5 hours per day; and from March 8, 2020 through April 12, 2020, he worked seven days per week for 13 hours per day. *See* Duan Decl. ¶¶ 13-15, 18, 21.

those days.  *See* Compl. ¶ 127.  Accordingly, the Court recommends granting Duan's request for spread of hours pay as follows.

| Time Period | Minimum Wage Rate | Spread of Hours Days | Total |
|---|---|---|---|
| 11/2/2019-11/8/2019 | 15.00 | 4 | $60.00 |
| 11/11/2019-4/12/2020[24] | 15.00 | 154 | $2,310.00 |
| **Total** | | | **$2,370.00** |

### D.    Statutory Damages under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule.  After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-b).  Further, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details."  *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotations and citation omitted).  After February 27, 2015, violations of Section 195(3) carry damages of $250 per workday, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-d).

Here, plaintiffs allege they never received a wage notice or wage statements from defendants at any point during the course of their employment.  *See* Am. Compl. ¶¶ 57, 69, 77, 84.  Because each plaintiff worked without a wage notice for more than 100 days and without a

---

[24] Awarding damages up until 4/12/2020 only, instead of 4/25/2020.  *See* footnote 20, above.

wage statement for more than 20 days after February 27, 2015, this Court recommends awarding each plaintiff the maximum statutory damages of $5,000 for violations of N.Y. Lab. Law § 195(1), and $5,000 for violations of N.Y. Lab. Law § 195(3), for a total of **$10,000**. *See Sarmiento Perez v. Comhar Grp.*, No. 19-CV-0964, 2020 WL 1364908, at *6 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019), *aff'd*, 990 F.3d 251 (2d Cir. 2021).

### E.    Liquidated Damages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages, *Barfield*, 537 F.3d at 150; however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA.  *See* 29 U.S.C. § 260.  Similarly, the NYLL permits employees to recover "an additional amount as liquidated damages equal to [100] percent of the total amount of the wages found to be due . . . unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 663(1).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA."

*Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (internal quotations and citation omitted). However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Id.*; *see also* N.Y. Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith. *See Lu Nan Fan*, 2019 WL 1549033, at *11. As this Court has calculated plaintiffs' damages according to the NYLL, plaintiffs are entitled to 100 percent of their unpaid wages as liquidated damages. Accordingly, this Court recommends awarding plaintiff Duan **$38,921.58** ($784.00 + $35,767.58 + $2,370.00) in liquidated damages. For plaintiff Su, the Court recommends awarding liquidated damages in the amount of **$10,428.75** ($7,188.75 + $3,240.00).

### F.    Tools of the Trade

In their memorandum of law, plaintiffs argue that defendants failed to pay plaintiffs for the cost of purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, in violation of the New York Labor Law. *See* Pls.' Mem. at 8-9, Dkt. 55-1. Accordingly, plaintiffs Duan and Su seek $6,652.50 and $4,095, respectively, for "unpaid gas fees." *Id.* at 9. However, plaintiffs did not assert this claim in their Amended Complaint. Pursuant to Rule 54 of the Federal Rules of Civil Procedure, a default judgment must "not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Although plaintiffs allege in the Amended Complaint that they spent on average $30 to $40 per day (Am. Compl. ¶ 70 ($35-40 for Duan), ¶ 85 ($30-35 for Su)) on maintenance of their delivery vehicles, they did not plead a claim or otherwise seek recovery of those amounts in the pleading. *See* Am. Compl., Dkt. 5 at ECF pages 20-27; *id.* at Wherefore Clause, Dkt. 5 at ECF pages 27-28. This Court, therefore, recommends denying plaintiffs' request for damages for "tools of the

trade." *See Choi v. AHC Med. Services, PLLC*, No. 22-CV-1450, 2023 WL 5612394, at *8 (E.D.N.Y. Aug. 1, 2023) (on motion for default judgment, limiting plaintiff to causes of action included in the complaint), *report and recommendation adopted*, No. 22-CV-1450, 2023 WL 5613718 (E.D.N.Y. Aug. 30, 2023)*; Kim v. Fam. Bob Inc.*, No. 20-CV-906, 2021 WL 7906544, at *7 (E.D.N.Y. Jan 26, 2021) (same).

### G.    Prejudgment Interest

Plaintiffs request an award of prejudgment interest pursuant to New York law.  *See* Pls.' Mem. at 9-10, Dkt. 55-1.  "Prejudgment interest is compensatory in nature and is not available where a plaintiff successfully claims liquidated damages under the FLSA because the plaintiff is considered to have been appropriately compensated through the award of liquidated damages." *Nam v. Ichiba Inc.*, No. 19-CV-1222, 2021 WL 878743, at *9 (E.D.N.Y. Mar. 9, 2021) (citing cases). "The NYLL, however, explicitly provides that a successful plaintiff should receive both liquidated damages and prejudgment interest." *Id.; see* N.Y. Labor Law § 198(1-a). Accordingly, prejudgment interest is available for unpaid minimum and overtime wages under the NYLL, but not on liquidated damages or amounts awarded under the WTPA.  *See Nam*, 2021 WL 878743, at *9.  This Court recommends awarding prejudgment interest here because plaintiffs are receiving damages only under the NYLL.  *See Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *12 n.21 (E.D.N.Y. Nov. 29, 2021), *aff'd*, 2023 WL 2395995 (2d Cir. Mar. 8, 2023).

Prejudgment interest on NYLL damages is calculated at a rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004; *Espinoza*, 2022 WL 987429, at *19.  In cases in which damages are "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R.

§ 5001(b).  Courts have discretion in determining a reasonable date from which to award prejudgment interest.  *See Nam*, 2021 WL 878743, at \*9.

In this action, the Court recommends adopting the interest accrual dates proposed by plaintiffs – the midpoint of each plaintiff's employment period.  *See* Affirmation of Zhanyuxi Wang ¶¶ 53 n.1, 59 n.2, Dkt. 55-2; *Espinoza*, 2022 WL 987429, at \*19.  Accordingly, the interest accrual date is January 25, 2020 for plaintiff Duan and January 17, 2020 for plaintiff Su.

"To calculate the per diem interest rate, [courts must] multipl[y] the statutory rate of 9% per annum by the total damages award for [plaintiffs' wage claims]."  *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2020 WL 5822455, at \*11 (E.D.N.Y. Sept. 1, 2020), *report and recommendation adopted*, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020).

Here, this yields **a per diem rate of $9.60** with respect to plaintiff Duan ((9 percent × $38,921.58) ÷ 365 days = $9.60).  Accordingly, this Court recommends awarding plaintiff Duan prejudgment interest at a daily rate of $9.60 from January 25, 2020 through the date judgment is entered.  As to plaintiff Su, this Court recommends awarding interest at **a daily rate of $2.57** ((9 percent x $10,428.75) ÷ 365 days) from January 17, 2020 through the date judgment is entered.

### H.    Attorneys' Fees and Costs

Plaintiffs seek to recover $38,792.18 in attorneys' fees and $1,096.00 in costs  *See* Supp. Decl. of Zhangyuxi Wang ("Supp. Wang Decl.") ¶ 17, Dkt. 57.

Plaintiffs are entitled to recover reasonable attorneys' fees and costs under the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198, 663(1).  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged."  *Fermin*, 93 F. Supp. 3d at 51 (E.D.N.Y. 2015); *see generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.

1983).  A fee application must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148.  "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010).  District courts have broad discretion in determining the reasonableness of an attorney's requested fees.  *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).  "[A] fee award should be based on scrutiny of the unique circumstances of each case." *McDaniel v. City of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010) (internal quotation marks and citation omitted).

　　To determine whether attorney's fees are reasonable, courts consider both the hourly rate and number of hours worked.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "[T]he Supreme Court and Second Circuit have held that 'the lodestar – the product of a reasonable hourly rate and the reasonable hours required by the case – creates a presumptively reasonable fee.'" *Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401, 2020 WL 7239678, at *1 (S.D.N.Y. Dec. 9, 2020) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011)). This presumptively reasonable fee or lodestar is essentially "what a reasonable paying client would be willing to pay, given that such "party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. NYC Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009); *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).  In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district where the reviewing court sits.  *See Simmons*, 575 F.3d at 174-75; *Arbor Hill*, 522 F.3d at 191.  Other factors include the labor and

skill required, the difficulty of the issues, the attorney's customary rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 191.

### 1.    Hourly Rates

Plaintiffs' counsel has billed at an hourly rate of $300-$325 for Zhangyuxi Wang, and $150-$175 per hour for Ge Yan, and supported the rates requested with limited information about each individual's background and experience. *See* Supp. Wang Decl. ¶¶ 5-8, Dkt. 57; Dkt. 57-1 (billing records).[25]  "Courts in this District have held reasonable hourly rates in FLSA cases to be approximately $300-450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-$80 for legal support staff." *Montanes v. Avanti Pizza 2 Inc.*, No. 21-CV-586, 2022 WL 17820103, at *8 (E.D.N.Y. Oct. 20, 2022) (quoting *Miranda v. Astoria Provisions, LLC*, No. 19-CV-02923, 2020 WL 6370058, at *10 (E.D.N.Y. July 24, 2020), *report and recommendation adopted*, 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020)); *accord De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003, 2021 WL 2227977, at *11 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021).  Plaintiffs request $150-$175 per hour for the work of Ge Yan, who is a law clerk and received her L.L.M. degree in 2019. *See* Supp. Wang Decl. ¶ 7.  The Court finds that the requested rates of $150 and $175 per hour for Ge Yan are appropriate. *See Li v. HLY Chinese*

---

[25] Although plaintiffs provided information about Jian Hang and Yongjin Bae to support their billing rates of $375 and $325 per hour, respectively, there are no time entries attributed to Mr. Hang in the billing records submitted, and plaintiffs have voluntarily stricken all of the time entries relating to Ms. Bae, except for one entry on 3/30/2023. *See* Supp. Wang Decl. ¶¶ 5, 6, Dkt. 57; Dkt. 57-1 at ECF pages 14 (entry on 9/23/2022), 16 (entry 10/21/2022), 20 (entry on 3/30/2023).  On 3/30/2023, it appears that Ms. Bae had a discussion with Zhangyuxi Wang regarding the return of a confession of judgment or COJ.  Given that the return of a confession of judgment likely does not relate to the defaulting defendants at issue in the instant motion for default judgment, but rather the settling defendants, and appears duplicative, the Court declines to award the fees requested on behalf of Ms. Bae. *See* Section IV.H.2, below; Dkt. 57-1 at ECF page 20 (entry on 3/30/2023).

*Cuisine Inc.*, 596 F. Supp. 3d 439, 452 (E.D.N.Y. 2022) (approving hourly rates of $150 and $250 for law clerks).

However, the Court recommends reducing the hourly rate for Mr. Wang for whom no information about his job title, years of practice, or other relevant credentials or background has been provided, other than that he graduated from the University of Southern California Law School. *See* Supp. Wang Decl. ¶ 8. In the absence of any further information that would permit the Court to ascertain the extent of his background and experience, the Court finds that $200 per hour is appropriate for the work of Mr. Wang. *See Lee v. New Kang Suh, Inc.*, No. 17-CV-9502, 2023 WL 2024805, at *2 (S.D.N.Y. Feb. 15, 2023) (reducing Mr. Wang's fee to $200 per hour, given "the vague nature of background information provided"); *Chen*, 2023 WL 2583856, at *19 (recommending $100 per hour for attorneys where no credentials submitted); *Li v. Chang Lung Grp., Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (same).

In addition to Mr. Wang and Ms. Yan, counsel included ten additional timekeepers in their billing records, about whom plaintiffs have provided no information, including whether that individual is an attorney: Yu Zhang, Oscar Alvarado, Jiajing Fan, Yuezhu Liu, Martina Yanes, Qinyu Fan, Shan Zhu, Ziyi Gao, Ge Qu and Sidney Lee. For those billing entries that are attributed to an individual for whom no biographical information whatsoever is provided, the Court recommends declining to award any attorney's fees in connection with those entries. *See Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19-CV-2532, 2022 WL 2788655, at *9 (S.D.N.Y. July 15, 2022) (declining to "award any fees whatsoever to the Hang firm based on the reported work done by timekeepers as to whom no qualifications are reported"); *Sanchez v. DPC New York Inc.*, 381 F. Supp. 3d 245, 251 n.7 (S.D.N.Y. 2019) (denying fees for timekeeper for whom "no biographical information is provided"). Indeed, the Hang & Associates law firm

32

has been warned repeatedly of this same defect in prior cases.[26] S*ee, e.g., Chan v. Xifu Food, Inc.*, No. 18-CV-5445, 2020 WL 5027861, at *11 (E.D.N.Y. Aug. 5, 2020), *report and recommendation adopted*, 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020); *Cui v. Monroe Nail II Corp.*, No. 18-CV-4256, 2019 WL 1643539, at *1-*2 (E.D.N.Y. Apr. 16, 2019) (declining to modify prior ruling rejecting proposed fee in an FLSA case where Hang failed to provide information about professionals who worked on the case); *Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020); *Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963, 2019 WL 1549033, at *14 (E.D.N.Y. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).  In any event, plaintiffs' request for attorneys' fees relating to at least twelve different timekeepers in a relatively straightforward default judgment case is excessive and demonstrates substantial redundancies. *See Gonzalez v. Fresh Start Painting Corp.*, No. 18-CV-11124, 2022 WL 3701096, at *4 (S.D.N.Y. Aug. 26, 2022) ("staffing this straightforward wage case with 10 timekeepers is a recipe for disaster from a reasonable billing point of view").

In sum, this Court recommends awarding attorneys' fees for Mr. Wang at the rate of $200 per hour and for Ge Yan at the rates of $150 and $175 per hour.  The Court further recommends denying fees for the work completed by other timekeepers.

### 2.    Hours Expended

Next, this Court must determine that the hours billed were also reasonable.  Courts award fees only for hours that are "reasonably expended." *Hensley*, 461 U.S. at 430, 433.  "When considering an application for attorneys' fees, the Court should exclude 'excessive, redundant, or

---

[26] While the Court could have offered plaintiffs' counsel a further opportunity to supplement their attorneys' fees application, the Court already *sua sponte* granted them one opportunity to supplement.  *See* Order dated May 22, 2023.  "The determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal quotation marks omitted).

otherwise unnecessary' hours." *Dominic Schindler Holding, AG v. Moore*, No. 20-CV-4407, 2022 WL 987428, at *9 (E.D.N.Y. Jan. 12, 2022) (quoting *Hensley*, 461 U.S. at 434). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application[.]'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citation omitted); *accord Rosen v. LJ Ross Assocs., Inc.*, No. 19-CV-5516, 2022 WL 493728, at *6 (E.D.N.Y. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 493274 (E.D.N.Y. Feb. 17, 2022); *see Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022); *Ortiz v. City of N.Y.*, 843 F. App'x 355, 360 (2d Cir. 2021).

On a motion for default judgment, courts typically reduce or exclude attorney hours that were expended on matters related to other defendants. *See JTH Tax LLC v. Sanchez*, No. 22-CV-6160, 2023 WL 6813449, at *7 (S.D.N.Y. Oct. 16, 2023), *report and recommendation adopted*, 2023 WL 8936352 (S.D.N.Y. Dec. 27, 2023); *Marvici v. Roche Facilities Maintenance, LLC*, No. 21-CV-4259, 2023 WL 5810500, at *13-*14 (S.D.N.Y. Sept. 8, 2023), *report and recommendation adopted*, 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023). For fees that were billed for services related to both non-defaulting and defaulting defendants, such fees may be reduced by an across-the-board percentage. *See JTH Tax*, 2023 WL 6813449, at *7; *Marvici*, 2023 WL 5810500, at *13-*14; *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *21 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

Here, plaintiffs' counsel represents that, at the Court's request, counsel deducted time entries related to those defendants that were dismissed and, further proposed a reduction of 35 percent to account for the six individual defendants against whom plaintiffs did not seek default judgment. *See* Supp. Wang Decl. ¶¶ 13-17. Notwithstanding counsel's purported attempt to

exclude time spent on non-defaulting defendants, upon a review of the billing records submitted, the Court finds that many of the remaining time entries specifically refer to non-defaulting defendants,[27] which must be excluded from the attorneys' fee award.[28]  In addition, to account for the time spent on tasks that benefitted the claims against all defendants generally, the Court recommends applying an across-the board reduction of **20 percent** of the time spent.  *See JTH Tax*, 2023 WL 6813449, at *7 (reducing fees by 2/3 for time entries that do not identify any defendant); *Giffen Sec., LLC v. Citadel Car Alarms, LLC*, 19-CV-3494, 2020 WL 3264173, at *6 (S.D.N.Y. June 17, 2020) (recommending reduction by 65 percent to account for tasks applicable to all defendants), *report and recommendation adopted*, 2020 WL 3791869 (S.D.N.Y. July 6, 2020); *Xochimitl*, 2016 WL 4704917, at *21 (recommending reduction of 80 percent for time that related to claims brought against all defendants).  Although this percentage reduction is lower than that proposed by plaintiffs, *see* Supp. Wang Decl. ¶ 16 n.3, the amount is appropriate given the Court's recommendation that a fee award for the work of the ten additional timekeepers, for whom no background information was provided, should be denied.

Based on this Court's exhaustive review of counsel's 23-pages of billing records, and after excluding time entries that related solely to other defendants, the Court finds that **97.1** hours (while still higher than average) is within the range of reasonableness for an FLSA default case that continued for several years.  Accordingly, the Court recommends awarding attorneys' fees as summarized in the below table:

---

[27] Some of the billing entries appear to relate to a different wage-and-hour action entirely.  *See, e.g.*, Dkt. 57-1 at ECF page 2 (9/3/2020 entry referencing 20-cv-2776); *id.* (10/14/2020 entry referencing same).

[28] *See e.g.*, Dkt. 57-1 at ECF page 5 (11/10/2021 entry referencing status conference with court with two answering defendants); *id.* (11/10/2021 entry referencing Phone conference with Rose Cake defendants re: conference); *id.* at ECF page 9 (3/17/2022 entry referencing Communicate (in firm) with Shan re vacate default re Dr. Sea and update the case status); *id.* (5/11/2022 entry referencing R/R emails from OC re: lease agreement and relationship between Umi Sushi and Plaintiff); *id.* at ECF page 10 (5/31/2022 entry referencing Interrogatories draft to three defendants).

| Timekeeper | Hourly Rate | Number of Hours | Fee Award |
|---|---|---|---|
| Ge Yan | $150 | 15.4 | $2,310.00 |
| Ge Yan | $175 | 0.7 | $122.50 |
| Zhangyuxi Wang | $200 | 81 | $16,200.00 |
| Total | | 97.1 | $18,632.50 |
| *Total after 20 percent reduction* | | | **$14,906.00** |

In sum, this Court recommends awarding plaintiffs attorneys' fees in the amount of **$14,906.00**.

Finally, plaintiffs request an award of litigation-related costs in the amount of $1,096.00, including $400.00 for the Court's filing fee and $696.00 in service of process fees, which includes service on defendants that are not the subject of this motion. *See* Dkt. 57-1. "Generally, a prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendants as long as those costs are tied to determinable, out of pocket disbursements." *Aponte v. 5th Ave. Kings Fruit & Vegetables Corp.*, No. 20-CV-5625, 2022 WL 17718551, at *10 (E.D.N.Y. Dec. 15, 2022) (internal citation omitted); *see* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Since the costs incurred here are routinely recoverable, this Court recommends that plaintiffs be awarded the Court's filing fee of $400.00 and expenses incurred for service of process on the four defendants at issue in this motion in the amount of $384 ($96 x 4 defendants), for a total of **$784.00**.

## Conclusion

For the reasons set forth above, this Court recommends:

(1) granting plaintiffs' motion for a default judgment against defendants, jointly and

severally, and entering judgment against defendants Studio M Bar & Lounge Inc, Provence BBQ & Bar Inc, Pho Dem Inc. and Pot Pa Hotpot Inc.;

(2) awarding plaintiffs damages in the following amounts, which are comprised of unpaid minimum wages, overtime wages, spread of hours wages (if applicable), liquidated damages and statutory damages:  **$87,843.16** for **Yunhan Duan** and **$30,857.50** for **Yiming Su**;

(3) awarding plaintiffs pre-judgment interest as described above; and

(4) awarding plaintiffs attorneys' fees in the amount of **$14,906.00** and costs in the amount of **$784.00**.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiffs' counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendants and to file proof of service on ECF by **February 5, 2024**.  Any objections to the recommendations made in this Report must be filed with the Honorable Rachel P. Kovner within 14 days after the filing of this Report and Recommendation and, in any event, on or before **February 14, 2024**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated:  Brooklyn, New York
       January 31, 2024

                        s/ James R. Cho
                        James R. Cho
                        United States Magistrate Judge